**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                          :

| | |
|---|---|
| 21ST CENTURY INSURANCE : | |
| COMPANY, individually, and as attorney : | |
| in fact for MYRIAM LEDEE, : | |
| : | |
|          Plaintiff, : | Civil Action No. 15-7075 (FLW) (DEA) |
| : | |
|     v. : | |
| : | **OPINION** |
| FELIPE EXPRESS; FELIPE SANCHEZ : | |
| JR.; FELIPE SANCHEZ SR.; EDWARD : | |
| SANTANA; PERFECTO HERNANDEZ; : | |
| LUCIA HERNANDEZ; and MILTON : | |
| SAETEROS; et al., : | |
| : | |
|        Defendants. : | |
| _____ : | |
| : | |
| PERFECTO HERNANDEZ and : | |
| LUCIA HERNANDEZ, : | |
|         Plaintiffs, : | |
| : | |
|     v. : | |
| : | |
| EDWARD SANTANA; FELIPE : | |
| SANCHEZ; FELIPE : | |
| TRANSPORTATION; and FARMER'S : | |
| INSURANCE GROUP a/k/a : | |
| 21ST CENTURY INSURANCE; et al., : | |
| : | |
|        Defendants. : | |
| _____ : | |

**<u>WOLFSON, United States District Judge</u>:**

      Following an automobile accident on the New Jersey turnpike, Plaintiff 21st Century

Centennial Insurance Company ("21st Century" or "Plaintiff")[1] initiated this action (the "21st

_____

[1] 21st Century asserts this action individually, and as attorney in fact for Myriam Ledee.

1

Century case") against various defendants.[2]  The present dispute centers on 21st Century's claims against Felipe Sanchez, Sr., Felipe Sanchez, Jr., and Felipe Express (collectively, the "Felipe Defendants") for insurance fraud under the Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 17:33A-1 *et seq*. and common law fraud, as well as its claim seeking a declaration that 21st Century has no coverage obligations under a policy of insurance that it issued to Myriam Ledee. Perfecto Hernandez and Lucia Hernandez (defendants and consolidated plaintiffs, hereinafter, the "Passengers") brought a related action against 21st Century and the Felipe Defendants, which was subsequently consolidated with the 21st Century case.

Presently before the Court is 21st Century's Motion for Default Judgment against the Felipe Defendants, and its Motion for Summary Judgment as to its coverage obligations.  The Passengers cross-move for declaratory judgment on their entitlement to the statutory minimum coverage requirements mandated under New Jersey's comprehensive automobile insurance scheme.  For the reasons that follow, 21st Century's Motion for Default Judgment and Summary Judgment is GRANTED, and the Passengers' Motion for Declaratory Judgment is DENIED, as follows: (1) default judgment against the Felipe Defendants as to all counts asserted in Plaintiff's Amended Complaint is granted; and (2) 21st Century owes no coverage obligation to the Passengers.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This insurance coverage dispute arises out of a motor vehicle accident involving an Econoline van (the "Van") insured by 21st Century.  *See* 21st Century's Statement of Material

---

[2] Specifically, Plaintiff's Amended Complaint names as defendants Felipe Sanchez, Sr., Felipe Sanchez, Jr., Felipe Express, Edward Santana, Lucia Hernandez, Perfecto Hernandez, Luis Jimnenez Huggins, Quinmarie Rodrigues, the New Jersey Turnpike Authority, Milton Saeteros, Angelica Umanzor, and various fictitious parties (collectively, "Defendants").

Facts ("21SMF") ¶¶ 15-16; Lucia and Perfecto Hernandez's Counterstatement of Material Facts ("HCMF") ¶¶ 15-16.  The relevant 21st Century policy of insurance (the "Policy" or "21st Century Policy") lists Myriam Ledee, an Ohio resident and the ex-wife of Felipe Sanchez, Jr., as the named insured.[3]  21SMF ¶ 19; HCMF ¶ 19.  Defendants Felipe Sanchez, Sr. and Felipe Sanchez, Jr. are the owners of Felipe Express, a transportation company that operates out of Silver Springs, Maryland.  *See* 21SMF ¶ 25; HCMF ¶ 25.  Felipe Express provides transportation and taxi services, for a fee, to members of the public between the Washington, D.C. and New York City areas, including New Jersey.  *See id.*

The underlying facts concerning the accident are undisputed.  On March 6, 2015, Defendant Edward Santana, an employee of Felipe Express, was driving the Van on the southbound side of the New Jersey Turnpike, during the course of his employment, when he collided with a vehicle driven by a representative of the New Jersey Turnpike Authority.  Deposition Transcript of Edward Santana ("Santana Dep."), at 6:15-7:14; 21SMF ¶¶ 22-23; HCMF ¶¶ 22-23.  Perfecto Hernandez and Lucia Hernandez were passengers in the Van at the time of the accident.  21SMF ¶¶ 31-32; HCMF ¶¶ 31-32.  Lucia alleges that she sustained personal injuries, requiring medical treatment, as a result of the accident.  21SMF ¶¶ 33-34; HCMF ¶¶ 33-34.

---

[3] As described in greater detail, *infra*, the Felipe Defendants fraudulently obtained the 21st Century Policy in the name of Ledee.  Specifically, in their Internet insurance application with 21st Century, the Felipe Defendants identified Ledee as the owner of the Van for which coverage was sought, and indicated that the Van was for personal use, despite knowing that it would be used commercially by Felipe Express.  *See* 21SMF ¶¶ 7-9; HCMF ¶¶ 7-9.

At the time of the accident, the Van was titled and registered to Felipe Sanchez.[4] 21SMF ¶¶ 16-17, 22; HCMF ¶¶ 16-17, 22. It is undisputed that, at the time of the accident, the Van was being operated as a livery vehicle or taxi to transport passengers for a fee. *See* 21SMF ¶ 24; HCMF ¶ 24. At the scene of the accident, Santana provided police responders with an insurance card for a policy issued by Progressive Insurance (the "Progressive Policy").[5] 21SMF ¶ 17; HCMF ¶ 17. The Progressive Policy listed Ledee as the named insured. 21SMF ¶ 18; HCMF ¶ 18.

Following the accident, Progressive contacted Ledee regarding the Progressive Policy. Deposition Transcript of Myriam Ledee ("Ledee Dep."), at 34:24-25:12. Through her conversation with Progressive, Ledee learned that she was also the named insured under the 21st Century Policy. *See* 21SMF ¶ 19; HCMF ¶ 3. At the time of the accident, all vehicles listed on the 21st Century Policy, including the Van, were registered and owned by Felipe Sanchez. 21SMF ¶ 20; HCMF ¶ 20. Additionally, at the time of the accident, Felipe Express, Felipe Sanchez, Sr., Felipe Sanchez, Jr., and Edward Santana were not insured or named insured, as those terms are defined under the 21st Century Policy. 21SMF ¶¶ 26-29; HCMF ¶¶ 26-29.

While it is undisputed that the 21st Century Policy was obtained by way of Internet application, the parties dispute Ledee's involvement in the procurement of the Policy. In that regard, Ledee testified that she did not submit an application for the Policy, did not give anyone, including Felipe Express, Felipe Sanchez, Jr., and Felipe Sanchez, Sr., permission to obtain the Policy in her name, and was not aware that the Policy had been applied for or obtained prior to

---

[4] The registration record only indicates that the Van is registered to Felipe Sanchez, without specifying whether it is registered to Felipe Sanchez, Sr. or Felipe Sanchez, Jr. *See* Pls.' Mot. for Summary Judgment, Ex. J.

[5] The Progressive Policy is not at issue in the present case, and therefore, all other references to the "Policy" in this Opinion pertain to the 21st Century Policy.

the accident. Ledee Dep. at 24:14-25:12. Conversely, Felipe Sanchez, Jr. testified that he overheard his father, Felipe Sanchez, Sr., receive permission over the phone to use Ledee's name and information in procuring the Policy, and that Ledee provided Sanchez, Sr. with her name, date of birth, occupation, social security number, and driver's license number. Deposition Transcript of Felipe Sanchez, Jr. ("Sanchez, Jr. Dep."), at 24:16-25:14; 30:5-19; 47:4-22. Regardless of Ledee's involvement in procuring the Policy, Felipe Sanchez, Jr. testified that the Policy was procured under Ledee's name, with the intent to use the Policy to cover the Van used in the Felipe Express transportation service:

> Q. Now, the insurance that you were – that was being taken out -- that you were requesting from 21st Century –
>
> A. Uh-huh.
>
> Q. -- was it for the operation of the vans as part of the transportation service?
>
> A. The answer is, the way they were set up was my -- I admit that I did the wrong -- I did not know that you cannot set up, first, under somebody else's name which I assumed that wouldn't be a problem because -- I mean, she lives in Ohio, and the tags are registered there. And they're in the company's name, and she does work for the company. They were not in my dad's name. And the insurance -- your answer to the insurance is, no, they were not set up commercially which they should have been set up. They were set up as personal insurance policies.
>
> Q. Okay. So the answer to the question there at the end I want to make sure I understand. The intent to take this policy out was to insure the vans because they were being used as part of the operation of
>
> A. Correct.
>
> Q. Felipe Express?
>
> A. Correct.

Sanchez, Jr. Dep. at 36:19-37:22.

According to the testimony of Diana Yeager, an underwriting staff consultant for 21st Century, 21st Century conducted business in New Jersey during the relevant policy period,

including the date of the subject accident.  Deposition Transcript of Diana L. Yeager ("Yeager Dep."), at 22:9-16.  Yeager testified that during all relevant periods, 21st Century did not issue commercial policies, including policies covering taxis, buses, or delivery vehicles.  *Id.* at 22:17-23:1.

The Policy's liability insuring agreement provides, in pertinent part, as follows:

**INSURING AGREEMENT**

A. Subject to the liability limit stated in **your Declarations Page**, if **you** pay the premium for Liability Coverage, **we** will pay damaged for which any **insured** becomes legally liable due to **bodily injury** or **property damage** caused by an **accident** arising out of the **ownership**, maintenance, or use of an **auto** for which coverage under this **Part A** applies. Subject to the limit of liability, the amount **we** pay will include prejudgment interest awarded in a judgment against the **insured**. However, **we** will not pay for punitive or exemplary damages. **We** may settle or defend any claim or lawsuit as **we** deem appropriate.

In addition to the limit of liability, **we** will pay all defense costs **we** incur. **Our** duty to settle or defend ends when **our** limit of liability has been exhausted by payment of judgments or settlements. **We** have no duty to defend any lawsuit of settle any claim for **bodily injury** or **property damage** not covered under this policy.

Pls.' Mot. for Summary Judgment, Ex. A.

The Policy also includes two exclusions for liability coverage and medical expense benefits, which apply when the subject vehicle is being used as a public conveyance at the time of an accident.  Specifically, the exclusion pertaining to liability coverage provides as follows:

A. **We** do not provide Liability Coverage for, nor have a duty to defend, any **insured**:

**5. For any liability arising out of** the ownership or operation of a vehicle while it is being used to carry persons or property for a fee or any compensation, or while it is available for public hire. This Exclusion (**A.5**) applies to, **but is not limited to**, delivery of goods to customers whether on a wholesale or retail basis such food, newspapers or flowers. It does not apply to a share-the-expense car pool.

*Id.*, Ex. B.  Similarly, the exclusion pertaining to medical expense benefits provides:

**We** do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

. . .

**B.** Sustained while occupying your covered auto when it is being used to carry persons or property for a fee or any compensation or while it is available for public hire. This Exclusion (B.) applies to but is not limited to delivery of goods to customers either on a wholesale or retail basis such as food, newspapers or flowers. It does not apply to a share the expense car pool.

*Id.*, Ex. B.

On September 28, 2015, 21st Century, individually and as attorney in fact for Myriam Ledee, filed an Amended Complaint against Defendants.[6] Count One of the Complaint asserts a claim for insurance fraud under New Jersey law, pursuant to the Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 17:33A-1 *et seq.*, against the Felipe Defendants, alleging that the Felipe Defendants applied for, and obtained, the Policy covering the Van from 21st Century by fraudulently assuming the identify of Myriam Ledee. Am. Compl. ¶¶ 28-38. Count Two seeks declaratory relief that neither 21st Century nor Ledee have any liability or obligation to pay or indemnify anyone injured in the subject accident for economic or non-economic damages. *Id.* at ¶¶ 39-42. Count Three asserts a common law fraud claim against the Felipe Defendants. *Id.* at ¶¶ 43-44.

Additionally, on August 17, 2015, Perfecto Hernandez and Lucia Hernandez filed suit against 21st Century in the Superior Court of New Jersey, Law Division, Essex County, seeking personal injury protection benefits and economic and non-economic damages related to the accident. That case was subsequently removed to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a). On December 9, 2015, this Court

---

[6] On November 10, 2015, the New Jersey Turnpike Authority was dismissed from this action. ECF No. 16.

granted a motion to consolidate, pursuant to Federal Rule of Civil Procedure 42(a), the actions filed by 21st Century and the Passengers. ECF No. 17.

On April 24, 2016, default was entered against the Felipe Defendants for failure to plead or otherwise defend in connection with 21st Century's action against them. ECF No. 20. On January 31, 2017, 21st Century moved for default judgment and summary judgment. ECF No. 30. On the same date, the Passengers moved for declaratory judgment. ECF No. 33. Both of these Motions are presently before the Court.

## DISCUSSION

### I. Default Judgment Against the Felipe Defendants

The Court will first turn to 21st Century's argument that it is entitled to default judgment as to all Counts against the Felipe Defendants.[7]

#### A. Legal Standard

In order to obtain a default judgment, pursuant to Federal Rule of Civil Procedure 55(b), a plaintiff must first secure an entry of default under Rule 55(a). *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). Once a default is entered, "Rule 55(b) allows the plaintiff to request that the clerk or the court enter a default judgment against that defendant, depending on whether the claim is for a sum certain." *Id.* The Third Circuit has explained that while the entry of default judgment "is largely within a district court's discretion, three factors control this determination: '(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable

---

[7] The Court notes that the Passengers have not moved for default or for default judgment on their third-party claims against the Felipe Defendants. Accordingly, this Court's ruling on default judgment is limited to Plaintiff's claims against the Felipe Defendants (*i.e.*, the 21st Century case), and should not be construed as affecting the Passengers' claims against the Felipe Defendants.

conduct.'" *Id.* (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).  In considering a motion for a default judgment, courts "accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017).

> **B.      Default Judgment Against the Felipe Defendants is Warranted**

In the instant case, 21st Century argues that it is entitled to default judgment against the Felipe Defendants on each of its claims.  The Court finds that default judgment is appropriate against the Felipe Defendants on all counts, because Plaintiff has established a prima facie case for relief, and the *Chamberlain* factors support an entry of default judgment.[8]

First, the Court finds that default judgment is appropriate as to 21st Century's claim against the Felipe Defendants for insurance fraud under the IFPA.  The New Jersey Legislature enacted the IFPA to "confront aggressively the problem of insurance fraud in New Jersey." N.J.S.A. 17:33A-2.  To achieve that purpose, the IFPA "imposes stiff civil monetary penalties against perpetrators of insurance fraud." *State v. Fleischman*, 189 N.J. 539, 544 (2007).  The Legislature added the crime of "insurance fraud" in 2003, as part of a "a comprehensive set of solutions to the automobile insurance availability and affordability challenges facing insurers, consumers and regulators in New Jersey." *Id.* (quoting Assembly Banking and Insurance Committee, *Statement to Senate Subcommittee for Substitute for Senate Bill No.* 63, at 1 (May 5, 2003)).

---

[8] Because 21st Century does not seek a sum certain on any of the counts, the Court will enter default judgment only as to liability.

The IFPA provides, in relevant part, that an individual is liable for insurance fraud if he or she:

> Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining . . . an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract.

N.J.S.A. 17:33A-4(b); *see Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 172 (2006) (explaining that, in order to establish liability for insurance fraud, a plaintiff must demonstrate that the defendant "present[ed] any knowingly false or misleading statement in an insurance application."). Thus, the plaintiff must establish: (i) knowledge; (ii) falsity; and (iii) materiality. *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015). Unlike common law fraud, proof of fraud under the IFPA "does not require proof of reliance on a false statement or resultant damages." *Land*, 186 N.J. at 175. "The applicable burden of proof to prove a violation of the IFPA is a preponderance of the evidence." *Certain Underwriters at Lloyd's of London v. Alesi*, 843 F. Supp. 2d 517, 530 (D.N.J. 2011).

The unchallenged facts in this case demonstrate that the Felipe Defendants knowingly made false representations to 21st Century in order to obtain the Policy. In that regard, it is undisputed that the Felipe Defendants submitted an online application to 21st Century for a personal insurance policy in the name of Myriam Ledee, knowing that that policy procured would be used to cover the Van. *See* Amended Complaint ("Am. Compl.") ¶¶ 28-29. Indeed, in his deposition, Felipe Sanchez, Jr. admitted wrongdoing in procuring a personal policy in the name of Ledee, despite knowing that the Policy would be used for commercial purposes to insure

the Van.[9]  *See* Sanchez, Jr. Dep. at 36:19-37:22.  Those facts are sufficient to constitute a prima facie violation of the IFPA.  Moreover, because the Felipe Defendants have caused significant delay by failing to answer or otherwise defend this action, despite the fact that it has been nearly two years since the Amended Complaint was filed, and because no facts suggest that the Felipe Defendants would have a meritorious defense, the Court finds that default judgment on 21st Century's claim against the Felipe Defendants for insurance fraud under the IFPA is warranted.

Second, the Court finds that default judgment is also appropriate as to 21st Century's common law fraud claim.  To prevail on a claim of common law fraud under New Jersey law, a plaintiff must establish the following five factors:  (1) "a material misrepresentation by the defendant of a presently existing fact or past fact"; (2) "knowledge or belief by the defendant of its falsity"; (3) "an intent that the plaintiff rely on the statement"; (4) "reasonable reliance by the plaintiff"; and (5) "resulting damages to the plaintiff."  *Land*, 186 N.J. at 175.  "A misrepresentation, made in connection with an insurance policy, is material if, when made, 'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action.'"  *Palisades Safety & Ins. Ass'n v. Bastien*, 175 N.J. 144, 148 (2003) (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 542 (1990)).

Here, 21st Century has sufficiently alleged that the Felipe Defendants made a misrepresentation of fact in applying for a personal policy of insurance in Ledee's name, with knowledge that the policy procured would be used for commercial purposes to insure the Van owned by Felipe Express.  *See* Am. Compl. ¶¶ 27-32.  That misrepresentation was undoubtedly material, in light of Yeager's testimony that 21st Century would not have issued the policy, had it

_____

[9] While Felipe Sanchez, Jr. appeared for a deposition, the Felipe Defendants nonetheless failed to answer 21st Century's Amended Complaint, or otherwise defend this action, and therefore, on April 24, 2016, the Court entered default against the Felipe Defendants.

known that it was being used for a commercial vehicle. *See* Yeager Dep. at 22:17-23:1. Indeed, the Court finds that the Felipe Defendants applied for the insurance policy with the intent that 21st Century would rely on the information provided in determining whether to issue the policy. No facts suggest that 21st Century's reliance on the Felipe Defendants' misrepresentations was unreasonable, and 21st Century sustained damages by issuing a personal policy that insured a vehicle used for commercial purposes. Moreover, the *Chamberlain* factors weigh in favor of the entry of default judgment, because 21st Century has been prejudiced by the Felipe Defendants' failure to defend this action, and no facts suggest that the Felipe Defendants would have a meritorious defense against the common law fraud claim. Accordingly, the Court finds that default judgment against the Felipe Defendants as to liability for common law fraud is appropriate.

Having found that 21st Century is entitled to default judgment against the Felipe Defendants for fraudulently procuring the Policy, the Court also finds that 21st Century is entitled to rescind, and void *ab initio*, the Policy. Rescission is a judicial remedy "rooted in considerations of equity." *Rutgers Cas. Ins. Co. v. LaCroix*, 194 N.J. 515, 527 (2008). "Where a party has gained an unfair advantage by virtue of a fraudulent misrepresentation, and monetary damages alone will not satisfy the injury sustained by the aggrieved party, courts have looked to the equitable remedy of rescission to eliminate the damage." *Id.*; *see, e.g.*, *Citizens United Reciprocal Exch. v. Perez*, 223 N.J. 143, 151 (2015) (finding that rescission of policy obtained by fraudulent misrepresentations was warranted). Thus, the object of the equitable remedy of rescission "is to restore the parties to the *status quo ante* and prevent the party who is responsible for the misrepresentation from gaining a benefit." *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 612 (1989).

Within the field of insurance, "rescission has long been recognized as an available and necessary remedy to combat fraudulent behavior by an insured." *LaCroix*, 194 N.J. at 527; *see Remsden v. Dependable Ins. Co.*, 71 N.J. 587, 589 (1976) ("It is settled that a material factual misrepresentation made in an application for insurance may justify rescission if the insurer relied upon it to determine whether or not to issue the policy."). To that end, New Jersey courts have "recognized the need to declare an insurance contract void from its inception because of a variety of behaviors by an insured, when the materiality of a misrepresentation strikes at the core of the agreement to insure." *LaCroix*, 194 N.J. 515, 527–28 (2008). For example, in *Perez*, the Supreme Court of New Jersey determined that an insurer was entitled to rescind a policy of automobile insurance, because the insured failed to list a member of her household in applying for the policy. 223 N.J. at 151. The *Perez* Court reasoned that, by failing to list the second household member, the insurance company was "denied essential information relevant to its assessment of risk and, ultimately, to its decision to issue a policy insuring Perez." *Id.* Accordingly, the Court declared the Policy void *ab initio*. *Id.*

Here, the Felipe Defendants made material and fraudulent misrepresentations by applying for a personal policy of insurance using the identity of Ledee. By failing to disclose their true identities, the Felipe Defendants deprived 21st Century of the opportunity to examine the driving histories and other relevant records of the Felipe Defendants. Additionally, by applying for a personal policy of insurance, despite the fact that the Felipe Defendants knew that the Policy would be used to cover a commercial vehicle, 21st Century was denied information essential to determining whether to issue the Policy. Under New Jersey law, the Court finds that 21st

Century is entitled to rescind the Policy as it pertains to the Felipe Defendants, precluding the

Felipe Defendants from seeking any coverage as insureds.[10]

Moreover, because the Policy is void *ab initio*, default judgment is also appropriate with

regard to Count Two of the Amended Complaint, as it pertains to the Felipe Defendants.  In

Count Two, 21st Century seeks an order declaring that:  (i) there is no coverage under the Policy

for any claims that may arise out of the accident; and (ii) the Policy is void *ab initio*.  In light of

the Court's holding that the Policy is void *ab initio*, the Court also finds that 21st Century is

entitled to a declaration that it owes no coverage obligations, generally, under the Policy, to the

Felipe Defendants for any claims arising from the accident.

## II.     21st Century's Coverage Obligations For The Passengers

Notwithstanding the Court's entry of default judgment against the Felipe Defendants, and

declaration that the Policy is void *ab initio*, the Court must determine whether 21st Century has

any coverage obligations to the Passengers, who were innocent third-party victims in the

accident.  In that regard, as discussed in greater detail below, it is well-established under New

Jersey law that innocent third-party victims of automobile accidents can, under certain

circumstances, recover benefits under a policy that is declared void *ab initio* on the basis of fraud

by the named insured.  *See Bastien*, 175 N.J. at 149.  Accordingly, the Court must analyze

whether New Jersey's policy of compensating innocent third-party accident victims requires 21st

---

[10] However, as discussed further, *infra*, the Court's finding that the Policy is void *ab initio* does not mean, as a matter of law, that 21st Century escapes its coverage obligations for the Passengers.  *See DeMarco v. Stoddard*, 223 N.J. 363, 379 (2015) ("[A] fraudulently obtained policy of insurance is subject to rescission by the insurer, but an innocent third party injured by the insured before discovery of the fraud may look to the liability coverage in place at the time of injury up to the minimum mandatory insurance required by law.").

Century to provide to the Passengers in this case the minimum insurance coverage required under New Jersey's statutory automobile insurance scheme.

21st Century argues that it is entitled to summary judgment and a declaration of no coverage with respect to the Passengers, because New Jersey's "deemer statute," N.J.S.A. 17:28-1.4, is not implicated in this case.[11] The Passengers oppose 21st Century's Motion for Summary Judgment, and seek a declaration that, as innocent third-party victims of an automobile accident, they are entitled to the minimum coverage requirements under the deemer statute.

## A. Legal Standard

Because the Court will analyze 21st Century's Motion for Summary Judgment and the Passengers' Cross-Motion for Declaratory Judgment concurrently, the Court begins with the relevant legal standards for both Motions. Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or

---

[11] In its Motion for Summary Judgment, 21st Century also argues that: (1) the public conveyance exclusions contained in the Policy preclude a finding that 21st Century has a coverage obligation for medical expenses sustained by the Passengers; and (2) under the statutory language of N.J.S.A. 39:6A-4, 21st Century is under no legal obligation to provide personal injury protection coverage to the Passengers, because Ledee, the named insured under the Policy, did not provide permission to the Felipe Defendants, Santana, or the Passengers to use the Van. Nonetheless, because the Court finds that the Passengers are not entitled to receive from 21st Century the minimum statutory coverage under the deemer statute, and thus, that 21st Century owes no insurance coverage obligations to the Passengers, the Court does not reach these arguments.

unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366; *see Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Not every issue of fact is sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Additionally, the nonmoving party cannot rest upon mere allegations; he or she must present actual evidence that creates a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249. In conducting a review of the facts, the nonmoving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v.*

*Kyler*, 204 F.3d 102, 105, n.5 (3d Cir. 2000); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Additionally, the Court must determine whether the Passengers are entitled to declaratory relief under the Declaratory Judgment Act. "The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy by which federal courts may declare the rights and other legal relations of any interested party seeking such a declaration when there is a case of actual controversy." *Benihana of Tokyo, Inc. v. Benihana*, Inc., 622 Fed. Appx. 169, 174 (3d Cir. 2015) (quoting *Brockstedt v. Sussex Cnty. Council*, 794 F. Supp. 2d 489, 499 (D. Del. 2011)) (internal quotations omitted). The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In determining whether to fashion declaratory relief, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Thus, "[a] plaintiff bringing an action for declaratory judgment must prove, by a preponderance of the evidence, that there is an actual controversy between the parties." *Benihana*, 622 F. App'x at 174.

### B.      Automobile Insurance Under New Jersey Law

The Court begins its analysis with a brief introduction to New Jersey's automobile liability insurance laws. In 1972, the New Jersey Legislature enacted the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 *et seq.* (the "No Fault Act"). The No Fault Act is designed to "ensure that automobile accident victims are not left without the means

to recover financially for their injuries from a judgment-proof tortfeasor." *Caviglia v. Royal Tours of Am.*, 178 N.J. 460, 466 (2004); *see Proformance Ins. Co. v. Jones*, 185 N.J. 406, 414–15 (2005) ("Our comprehensive insurance scheme of mandating automobile insurance evinces a strong legislative policy of assuring at least some financial protection for innocent accident victims."). The No Fault Act "ushered in 'a system of first-party self-insurance' that provided an automobile accident victim prompt 'payment of out-of-pocket medical expenses' without regard to fault." *DiProspero v. Penn*, 183 N.J. 477, 485 (2005) (quoting *Caviglia*, 178 N.J. at 466). Specifically, under the No Fault Act, "[a]ll owners of motor vehicles registered or principally garaged in New Jersey are required to maintain minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles." *Caviglia*, 178 N.J. at 466 (citing N.J.S.A. 39:6B-1). Every policy must also include personal injury protection ("PIP"), guaranteeing medical expense benefits to those injured in automobile accidents, including the named insured, his or her household members, and certain pedestrians and permissive occupants of the vehicle. *See* N.J.S.A. 39:6A-4.

By 1985, however, New Jersey was confronted with a "growing number of cases where New Jersey residents were injured in accidents caused by out-of-state drivers whose insurance coverage was less than New Jersey's statutory requirements." *Gov't Employees Ins. Co. v. Allstate Ins. Co.*, 358 N.J. Super. 555, 560 (App. Div. 2003). In response to that concern, the New Jersey Legislature enacted N.J.S.A. 17:28-1.4, commonly referred to as the "deemer statute,"[12] as part of the state's no fault insurance plan. *See Gov't Employees*, 358 N.J. Super. at 561 ("[The deemer statute] sought to ensure that New Jersey-authorized insurance companies

---

[12] N.J.S.A. 17:28-1.4 is referred to as the "deemer statute" because it "'deems' New Jersey insurance coverage and tort limitations to apply to out-of-state policies." *Zabilowicz v. Kelsey*, 200 N.J. 507, 510 n. 1 (2009).

provide to their out-of-state insureds traveling in New Jersey the same protections required of in-state insured vehicles.").  The deemer statute provides, in relevant part, as follows:

> [A]ny insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage, or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least the liability insurance requirements of subsection a. of section 1 of P.L.1972, c. 197 (C.39:6B-1) or section 3 of P.L.1972, c. 70 (C.39:6A-3), the uninsured motorist insurance requirements of subsection a. of section 2 of P.L.1968, c. 385 (C.17:28-1.1), and personal injury protection benefits coverage pursuant to section 4 of P.L.1972, c. 70 (C.39:6A-4) or of section 19 of P.L.1983, c. 362 (C.17:28-1.3), whenever the automobile or motor vehicle insured under the policy is used or operated in this State.
>
> . . .
>
> "Automobile" means an automobile as defined in section 2 of P.L.1972, c. 70 (C.39:6A-2).

N.J.S.A. 17:28-1.4.  In short, the deemer statute requires certain insurers who are authorized to transact business in New Jersey to include in their polices to non-resident insureds coverage sufficient to satisfy New Jersey's minimum liability, uninsured motorist, and PIP coverage requirements, whenever the non-resident insured's vehicle is operated in New Jersey. *See Gov't Employees*, 358 N.J. Super. at 560.

## C.    Choice of Law

The first disputed issue in this case is whether New Jersey or Ohio law governs the Court's analysis of the scope of 21st Century's coverage obligations to the Passengers.  21st Century contends that Ohio law should govern the Court's interpretation of the Policy, because the Policy was issued in Ohio to Ledee, an Ohio resident, and 21st Century's performance under the Policy was due in Ohio.  In opposition, the Passengers argue that in cases where a party seeks

coverage under the deemer statute, New Jersey law governs notwithstanding the outcome of a traditional choice of law analysis.

The Court must apply New Jersey's choice of law rules to determine whether New Jersey or Ohio law governs the contract-based coverage claims at issue in this case. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). New Jersey courts engage in a two-step analysis to determine choice of law in a contract dispute. *Spence-Parker v. Del. River & Bay Auth.*, 656 F. Supp. 2d 488, 497 (D.N.J. 2009). At step one, the court assesses whether an "actual conflict" between the laws of the potentially interested states pertaining to the dispute at hand exists. *Id.* (citation omitted). If a conflict between the potentially applicable laws does not exist, the court is presented with a false conflict, and the choice of law "inquiry is over." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). If an actual conflict exists, however, the court moves on to the second step of its analysis, which requires the court to determine "which state has the most meaningful connections with and interests in the transaction and the parties." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995); *see Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010) ("In making a choice-of-law determination in a breach-of-contract case, New Jersey courts ask which forum has the most significant relationship with the parties and the contract.").

To determine which state has the most significant relationship with the parties and the contract, the New Jersey Supreme Court has instructed courts to look to the principles set forth in § 188 and § 6 of the Restatement (Second) of Conflicts of Laws. *See Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102-103 (1993). Section 188 directs the courts to consider, among other things:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflicts of Laws § 188(2) (1971). Section 6 lists the following nonexclusive factors relevant to a choice-of-law analysis:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Id. § 6(2).

However, New Jersey courts have eschewed the traditional choice of law analysis and found that New Jersey law applies in cases brought under the deemer statute. *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 523 (D.N.J. 2011) ("It has been consistently held that New Jersey law applies to cases brought on the basis of the 'deemer' statute."); *see also Hamilton v. Gov't Employees Ins. Co.*, 283 N.J. Super. 424, 429 (App. Div. 1995) ("When N.J.S.A. 17:28-1.4 applies, there is no choice-of-law issue."); *Adams v. Keystone Ins. Co.,* 264 N.J. Super. 367, 373-74 (App. Div. 1993) (holding that New Jersey law applied to claims brought under the deemer statute, despite the fact that New Jersey's only relationship to the dispute was as the situs of the accident). Here, because the Passengers seek coverage solely on the basis of the deemer statute, the Court will apply New Jersey law to determine 21st Century's coverage obligations.[13]

---

[13] The Court notes, however, that even if Ohio law governed this dispute, the Court's finding, *infra*, that 21st Century does not owe a coverage obligation to the Passengers would not be altered. To that end, the Passengers have not cited, and this Court, in conducting its own review, has not found, that Ohio law allows innocent third-party victims to recover benefits under a policy of automobile insurance, where that policy has been voided *ab initio*.

**D.     21st Century's Coverage Obligations to the Passengers**

     *1.     The Van Does Not Qualify as an "Automobile" under N.J.S.A. 39:6A–2a*

The narrow question presented in this case is whether the Van qualifies as an "automobile" under the deemer statute.  In that regard, if the Van qualifies as an "automobile," New Jersey's policy of compensating innocent third-party victims of automobile accidents would require 21st Century to provide the Passengers with the minimum statutory insurance requirements set forth in the deemer statute.

The deemer statute provides, in pertinent part, that automobile insurers, such as 21st Century, who issue policies outside of New Jersey, but are authorized to issue automobile insurance policies within the state, "shall include in each policy coverage to satisfy at least the liability insurance requirements of [the No Fault Act] . . . , whenever the *automobile* . . . insured under the policy is used or operated in this State."  N.J.S.A. 17:28-1.4.  The deemer statute incorporates the following definition of "automobile," contained in N.J.S.A. 39:6A-2:

> "Automobile" means a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching.

N.J.S.A. 39:6A-2.  In *New Jersey Mfrs. Ins. Co. v. Hardy*, 178 N.J. 327 (2004), the Supreme Court of New Jersey provided the following guidance in interpreting the definition of "automobile" in N.J.S.A. 39:6A-2:

> [T]he statute refers to a "type" of vehicle, and then excludes specific vehicles based on their use. The first clause of N.J.S.A. 39:6A–2a uses the insurance rating classification term "private passenger automobile" and includes two types of that classification: "private passenger" or "station wagon type" automobiles. The definition then exempts certain private-passenger-type and station-wagon-type automobiles based on their

specific use: those that are used "as a public livery or conveyance for passengers" or "rented to others with a driver" are excepted from the definition. The second clause of the definition addresses the broader category of "motor vehicle[s]." It establishes that certain identified types of motor vehicles are considered automobiles for the purpose of the No Fault Act provided that they are not used for business purposes. Again, the statute begins with a "type" of vehicle and then exempts some vehicles based on specific uses.

*Id.* at 334. Accordingly, to determine whether the Van meets the statutory definition of "automobile," the Court must focus first on what classification of vehicle the Van falls under, and then examine its use. *See id.*

Here, because the Van was used as a public or livery conveyance, and customarily used in the occupation, profession or business of the insured, the Court finds that the Van does not constitute an "automobile," regardless of whether it falls under the first or second vehicle classification set forth in N.J.S.A. 39:6A-2. First, assuming the Van is "private passenger or station wagon type" vehicle, it is undisputed that the Van was used as a public or livery conveyance. *See* 21SMF ¶ 24; HCMF ¶ 24. Because the Van was operated as a public or livery conveyance, it does not qualify as an "automobile" under the first classification in N.J.S.A. 39:6A-2a., and 21st Century is not obligated to provide the Passengers with the minimum insurance requirements set forth in the deemer statute.

Second, even if the Van falls within the second classification of "automobile," it does not qualify as an automobile for the purposes of the deemer statute, because it was customarily used in the business, profession, or occupation of Santana.[14] While the term "customarily" is not

---

[14] While the statute indicates that a vehicle does not qualify as an automobile if it is "customarily used in the occupation, profession or business of the *insured*," N.J.S.A. 39:6A-2 (emphasis added), the Appellate Division has held that "[t]he term 'insured' is not limited to the named insured but includes the operator of the vehicle at the time of the accident." *Thompson v. Potenza*, 364 N.J. Super. 462, 468 (App. Div. 2003). Accordingly, the Court will look to the occupation of Santana, the driver of the Van – in addition to that of Ledee, the named insured – to determine whether the Van qualifies as an "automobile."

defined in the statute, the Appellate Division has interpreted customarily to mean "'usually, habitually, according to custom; general practice or usual order of things; regularly.'" *Thompson v. Potenza*, 364 N.J. Super. 462, 469 (App. Div. 2003) (quoting Black's Law Dictionary, 385 (6th ed. 1990)).  For example, in *Hughes v. Dillon*, No. A-3730-06T1, 2008 WL 482549 (N.J. Super. Ct. App. Div. Feb. 25, 2008), the Appellate Division found that a van did not qualify as an automobile under N.J.S.A. 39:6A-2 – and therefore that the deemer statute was inapplicable – because the van "was exclusively utilized in [the plaintiff's] commercial stove repair business . . . ." *Id.* at *2.  Conversely, in *Potenza*, the court found that using a van once a week to make deliveries did not rise to the level of customary use.  364 N.J. Super. at 462.  Here, the undisputed facts indicate that, at time of the accident, Santana was employed as a driver for Felipe Express, and that the Van was customarily used as a transportation vehicle for Felipe Express. *See* 21SMF ¶ 24; HCMF ¶ 24.  Indeed, at the time of the accident, Santana was transporting the Passengers in the Van pursuant to his employment with Felipe Express.  *See* 21SMF ¶¶ 22-23; HCMF ¶¶ 22-23.  Thus, because the Van was customarily used in the occupation, business, or profession of Santana, it does not qualify as an automobile under N.J.S.A. 39:6A-2, and 21st Century is not obligated to provide the minimum coverage under the deemer statute.

While the Passengers rely on *Giordano v. Allstate Ins. Co.*, 260 N.J. Super. 329 (App. Div. 1992), to argue that the Van qualifies as an automobile under N.J.S.A. 39:6A, that case is inapposite.  In *Giordano*, the driver of a 1989 Ford Aerostar minivan brought an action to recover PIP benefits under a policy of insurance issued to his wife.  *See id.* at 330.  The trial court held that the minivan was not an "automobile" under the statute, because it was a van customarily used for business, occupational, or professional purposes.  *See id.*  The Appellate

Division reversed, finding that the trial court improperly classified the minivan as a "van" under the statute. *See id*. at 331-32 ("But we are satisfied that it was not a 'van' as that term is used in the policy and in N.J.S.A. 39:6A-2a. A van is usually understood to be an enclosed vehicle used for the transportation of goods or animals."). Rather, the court found that the minivan fell within statutory classification of a "private passenger or station wagon type vehicle." *Id.* at 332-33 ("The conclusion is unavoidable that the minivan was a 'station wagon type' vehicle within the meaning of the insurance policy and the statute."). Therefore, although the Appellate Division agreed that the minivan was customarily used for business, occupational, or professional purposes, that was not a disqualifying use under the statute, because the minivan fell within the classification of a station wagon type vehicle. *See id.* at 332.

*Giordano* is distinguishable from the present case. Importantly, unlike 21st Century here, the defendant-insurer in *Giordano* did not argue that the minivan was operated as a public or livery conveyance. As a result, once the Appellate Division classified the minivan as a station wagon type vehicle, it did not examine whether the minivan's usage disqualified it from being considered an "automobile" under the first classification of vehicle set forth in N.J.S.A. 39:6A-2a. Stated another way, the *Giordano* court did not analyze whether the disqualifying use provision pertaining to the private passenger or station wagon type vehicle classification was applicable. Conversely, here, even if the Van falls within the private passenger or station wagon type vehicle classification, it is not an "automobile" under N.J.S.A. 39:6A-2a, because it was used as a public or livery conveyance.

In sum, because the Van was operated as a public or livery conveyance, and was customarily used in the occupation, business, or profession of Santana, the Van does not qualify as an automobile under N.J.S.A. 39:6A-2, regardless of whether it falls within the statutory

classification of a "private passenger or station wagon type" vehicle or a "van." And, because the deemer statute only applies policies covering "automobiles," the Court's finding that the Van is not an automobile is fatal to the Passengers' attempt to seek coverage under the deemer statute. Accordingly, because the Van is not an automobile, 21st Century is not obligated to provide the Passengers with the minimum coverage requirements set forth in the deemer statute.

### 2. New Jersey's Innocent Third-Party Exception is Not Applicable

The Court's finding that 21st Century does not owe a coverage obligation to the Passengers under the deemer statute does not contravene New Jersey's policy of seeking to compensate innocent third-party victims injured in automobile accidents. In that regard, the Passengers argue that New Jersey's well-established policy of providing coverage to innocent third-parties, even where a policy is declared void *ab initio* based on fraud, should extend to cases where the vehicle was being used for commercial purposes; *i.e.*, to vehicles that do not fall within the statutory definition of "automobile" because they are put to an excluded use. The Court disagrees.

Within the realm of automobile insurance, New Jersey courts have long recognized a distinction between an insurer's coverage requirements to its insured and to injured third-parties, permitting innocent third-parties to recover under policies declared void *ab initio* due to conduct of the named insured. *See LaCroix*, 194 N.J. at 523-24; *Proformance*, 185 N.J. at 420 ("[T]he protection of innocent third parties is a primary concern of our personal injury no-fault system . . . ."); *Bastien*, 175 N.J. at 149 ("[A]lthough the company may rescind the policy, thereby disentitling Leonel to any PIP coverage as the named insured, that does not mean that it escapes liability in respect of innocent, third-party members of the public whose protection is a paramount concern of the PIP, no-fault system."); *Fisher v. New Jersey Auto. Full Ins.*

*Underwriting Ass'n By & Through Hanover Ins. Co.*, 224 N.J. Super. 552, 557 (App. Div. 1988) ("The insurance carrier's liability to its assured who may be guilty of some act or conduct which renders a policy void *ab initio* is therefore distinct from its liability to an injured third person."). For example, in *Fisher*, the Appellate Division held that the defendant-insurer was required, under a policy issued to the owner of a vehicle involved in an accident, to provide PIP benefits to an injured third-party passenger, despite the fact that the policy was declared void *ab initio* due to misrepresentations made by the named insured. 224 N.J. Super. at 557. The court reasoned that the No Fault Act "is social legislation designed to give the broadest protection to automobile accident victims," *id.* at 557, and therefore, permitting insurers to escape liability as to innocent third-parties on the basis of a misrepresentation made by the insured "would undermine the legislative purpose of our No-Fault Law." *Id.* at 559.

Similarly, in *LaCroix*, the New Jersey Supreme Court held that the plaintiff could recover PIP benefits under a policy of insurance issued to the vehicle's owner, which was declared void *ab initio* due to material misrepresentations of the named insured. 194 N.J. at 519. In so holding, the Court recognized a distinction between two classes of accident victims with respect to benefits under the No Fault Act: "[i] the named insured and family members residing in the household; and [ii] other persons who sustain bodily injury while occupying, entering into, alighting from or using the vehicle of the named insured with that person's permission." *Id.* at 523. With respect to the latter class, the Court explained that "courts have striven to provide protection to third-party victims in fulfillment of the policy intentions animating the no-fault system." *Id.* Accordingly, even though the policy at issue in that case was declared void *ab initio*, the Court found that it was appropriate to mold the equitable remedy of rescission to

require the insurer to provide the deemer statute's minimum coverage to the innocent third-party victim.  *See id.* at 531-32.

While cognizant of New Jersey's strong interest in protecting innocent third-party victims, I cannot find that those policy interests mandate extending the deemer statute's minimum coverage obligations to vehicles that, because of their use for commercial purposes, do not qualify as "automobiles."  Importantly, each of the cases cited by the Passengers as extending coverage obligations to innocent third-party victims involved private vehicles that qualified as an "automobile" under N.J.S.A. 39:6A-2.  *See Perez*, 223 N.J. at 146; *LaCroix*, 194 N.J. at 518; *Proformance*, 185 N.J. at 409; *Bastien*, 175 N.J. at 147; *Marotta v. New Jersey Auto. Full Ins. Underwriting Ass'n By & Through Liberty Mut. Ins. Co.*, 280 N.J. Super. 525, 526 (App. Div. 1995), *aff'd*, 144 N.J. 325 (1996); *Fisher*, 224 N.J. Super. at 554; *State Farm Mut. Auto. Ins. Co. v. Wall*, 92 N.J. Super. 92, 94 (App. Div. 1966).  Moreover, in conducting my own review, I have not been able to locate any reported New Jersey decision extending coverage under the deemer statute to innocent third-parties injured in a vehicle that was used for commercial purposes.[15]  To wit, it would unnecessarily broaden the scope of the deemer statute, and the innocent-third party doctrine, if the Court were to find that 21st Century is obligated to provide coverage to the Passengers, where a condition precedent to the application of that statute – a finding that the Van is an automobile – is not present.

Indeed, the Appellate Division reached a similar conclusion in *Beaugard v. Johnson*, 281 N.J. Super. 162 (App. Div. 1995).  In that case, the court considered whether the No Fault Act's verbal threshold, N.J.S.A. 39:6A-8(a), applied to a fifteen-year-old plaintiff who was injured

---

[15] In predicting how the New Jersey Supreme Court would decide this issue, the Court is not bound by unreported decisions of New Jersey's courts.  *See* N.J. Ct. R. 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court.").

while a passenger on a school bus. *Id.* at 165-66. To make that determination, the court had to decide whether the passenger was entitled to PIP benefits, which, in turn, required the court to determine whether the passenger was injured while occupying an "automobile," as that term is defined in N.J.S.A. 39:6A-2. *See id.* The Appellate Division held that the passenger was not entitled to PIP benefits, because she "was a passenger in a school bus at the time of the accident," and a "school bus is not an 'automobile' as that term is defined under the statute." *Id.* at 169. Accordingly, even though the passenger was an innocent third-party victim, the Appellate Division found that the vehicle's classification as a non-automobile precluded her from enjoying the protections of the No Fault Act. *See id.* The New Jersey Supreme Court's subsequent opinions regarding innocent third-party coverage under the No Fault Act have not abrogated, overruled, or otherwise questioned the decision rendered in *Beaugard*.

Furthermore, the Court's finding that 21st Century is not required to provide the Passengers with the minimum coverage under the deemer statute is supported by basic principles of statutory construction. Where a statute is clear and unambiguous, courts need not look beyond the statute's words and phrases to interpret its true intent and purpose. *Beaugard*, 281 N.J. Super. at 169. In that regard, the "'legislature is deemed to have intended what it wrote and the Court may not construe a contrary concept.'" *Pine Belt Chevrolet, Inc. v. Jersey Cent. Power & Light Co.*, 132 N.J. 564, 578 (1993) (quoting *State v. Duva*, 192 N.J. Super. 418, 421 (Law. Div. 1983)). Here, the plain language of deemer statute dictates that an insurer need only include in its policies the minimum liability, UM, and PIP coverage required under the No Fault Act where a covered "automobile," as defined under N.J.S.A. 39:6A-2, is operated in New Jersey. *See* N.J.S.A. 17:28-1.4. And, in the definition of "automobile," the New Jersey Legislature specifically excluded vehicles that are used for commercial purposes; *i.e.,* vehicles that are

either: (i) used as "a public or livery conveyance for passengers"; or (ii) "customarily used in the occupation, profession or business of the insured . . . ." N.J.S.A. 39:6A-2. In short, the deemer statute expressly excludes policies covering vehicles used for commercial purposes from the minimum coverage requirements of the No Fault Act. Absent clear legislative intent to provide for the coverage of innocent third-party victims injured in commercial vehicles, the Court will not read such a requirement into the statute. Thus, the Court finds that the Passengers are not entitled to coverage under the deemer statute, despite their status as innocent third-party victims of the accident, because the deemer statute is not triggered where the vehicle in question is not an "automobile"; *e.g.*, where, as here, the vehicle is used as a public or livery conveyance, and customarily used in the occupation, business, or profession of the insured.

In sum, because a covered vehicle's status as an "automobile," as that term is defined under N.J.S.A. 39:6A-2, is a condition precedent to an insurer's minimum coverage obligations under the deemer statute, and because the Van in this case does not fall within the statutory definition of an "automobile," 21st Century is not required, under the deemer statute, to provide coverage to the Passengers.

## CONCLUSION

For the foregoing reasons, 21st Century's Motion for Default Judgment and Summary Judgment is GRANTED, and the Passengers' Motion for Declaratory Judgment is DENIED. Specifically, the Court finds that: (1) 21st Century is entitled to default judgment as to Counts One, Two and Three of its Amended Complaint, insofar as those claims are asserted against the Felipe Defendants; and (2) 21st Century is entitled to summary judgment on the issue of its coverage obligations to the Passengers, and thus, 21st Century is not obligated, under the Policy

or the deemer statute, to provide coverage to the Passengers for any claims arising from the accident.

Dated:  September 22, 2017       /s/ Freda L. Wolfson
                  Hon. Freda L. Wolfson
                  United States District Judge